UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL RAY MITCHELL,<br><br>Defendant. | 4:21-CR-40008-01-KES<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING MOTION TO SUPPRESS |

Defendant, Michael Ray Mitchell, is charged with possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(3), and 924(a)(2). Docket 1. Mitchell moves to suppress all evidence pertaining to him that was seized from the house where he was arrested.[1] Docket 25. Mitchell contends that the evidence was obtained in violation of the Fourth Amendment to the United States Constitution. *Id.* The motion was referred to a United States magistrate judge for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). After holding an evidentiary hearing, Magistrate Judge Veronica Duffy recommended Mitchell's motion to suppress be denied. Docket 31 at 18. Mitchell filed objections to the Report and Recommendation, specifically

---

[1] The government initially argued that Mitchell did not have standing to challenge the seizure of the evidence because he did not live at the residence where the evidence was seized. Docket 26 at 6. The government has not objected to the magistrate judge's finding that Mitchell does have standing because he was an overnight guest. Docket 31 at 9.

objecting to the magistrate judge's conclusion that a resident of the house consented to the officers' search of it.[2] Docket 33. After a de novo review of the Report and Recommendation and of the record, the court adopts the Report and Recommendation and denies Mitchell's motion to suppress.

## LEGAL STANDARD

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Because motions to suppress evidence are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980) (holding that dispositive motions under 28 U.S.C. § 636(b)(1) are subject to de novo review by the district court). The court is entitled, however, to "give weight to the magistrate judge's credibility determination." *United States v. Scares the Hawk*, 683 F. Supp. 2d 1036, 1037 (D.S.D. 2009) (quoting *United States v. Martinez-Amaya*, 67 F.3d 678, 681 (8th Cir. 1995)). In conducting a de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28

---

[2] Mitchell initially argued that this resident, Cameron Tillman, lacked authority to consent to a search of the residence, but he does not object to the magistrate judge's determination that the officers were justified in relying on Mr. Tillman's consent to enter the house. Docket 31 at 18.

U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## FACTS

According to the testimony given at the evidentiary hearing, the pertinent facts are as follows:

On December 18, 2020, several law enforcement members of an interagency task force tried to serve an arrest warrant for Anthony Richards at an address listed for Richards in the sex offender registry. Docket 32 at 6–7. Minnehaha County Deputy Sheriff Cody Lowe was the lead officer for executing this warrant. *Id.* at 8. He was assisted by Sergeant Butler, Deputy Kiel Ricci, Deputy Tanner Cornay, and Deputy Link Mitchell, all from the Minnehaha County Sheriff's Office, and United States Marshal Jack Valentine. *Id.* While the other officers made a perimeter around the house, Deputy Lowe and Sergeant Ricci knocked on a north-facing door of the residence, but they received no response. *Id.* at 11, 33. They then went to a west-facing door of the house, which opens into the garage, where they were joined by Sergeant Butler. *Id.* After Deputy Lowe knocked on this door, Cameron Tillman opened it from inside the garage. *Id.* at 11. Deputy Lowe and Sergeants Ricci and Butler testified that they recognized Mr. Tillman from previous encounters at this residence, which was leased by his mother, Christina Tillman. *Id.* at 16, 34, 55. Mr. Tillman is thirty years old and has previously been convicted of at least three felonies. *Id.* at 71, 85.

3

Deputy Lowe testified that he explained to Mr. Tillman they were looking for Richards on an outstanding warrant, and that Mr. Tillman replied that Richards was not present inside the home. *Id.* at 12. Deputy Lowe further testified that he asked Mr. Tillman if they could search the home for Richards, and that Mr. Tillman said "yes" and then stepped to the side, which allowed the officers to enter the garage. *Id.* Deputy Lowe also testified that if he had not received consent, the officers would not have entered the residence. *Id.* at 29. Deputy Lowe also asked Mr. Tillman if anyone else was inside the house, and Cameron stated that his mother and his sister were inside.[3] *Id.* at 17.

Though Sergeant Butler could not remember the exact words exchanged, he testified that Deputy Lowe explained that the officers had an arrest warrant for Richards and asked Mr. Tillman if Richards was present at the house. *Id.* at 35. Mr. Tillman said Richards was not present. *Id.* Sergeant Butler also testified that Deputy Lowe asked Mr. Tillman if they could search for Richards in the house, and that Mr. Tillman said they could and then stepped aside before the officers entered. *Id.* at 35–36. Sergeant Butler further testified that had Mr. Tillman not given consent, the officers would have left. *Id.* at 52.

Sergeant Ricci's testimony about the conversation between Deputy Lowe and Mr. Tillman differs from Sergeant Butler's only in that Sergeant Ricci did

---

[3] Deputy Lowe and Sergeant Butler both testified that Mr. Tillman said his mother and his sister were in the house. Docket 32 at 17, 35. Mr. Tillman testified that he told the officers his mother and his mother's partner were inside the house. *Id.* at 83. This discrepancy is not material because each of them testified that Mr. Tillman did not tell the officers that Mitchell was in the house. *Id.* at 17, 35, 83.

4

not personally know if there was "verbal confirmation" from Mr. Tillman after Deputy Lowe asked for permission to search the residence for Richards. *Id.* at 56. Sergeant Ricci also testified that he saw Mr. Tillman "move out of the way for [them] to come inside." *Id.*

After clearing the garage, officers then searched the rest of the house for Richards, who they did not find. In the basement of the house, however, they encountered Michael Mitchell, who was laying on a couch. *Id.* at 65. When Mitchell stood up, following the officers' instructions to do so, they saw an empty gun holster attached to his person. *Id.* at 66. They then located a pistol that was visible between two couch cushions, and an Altoids tin containing narcotics. *Id.* at 50; Docket 25-1 at 2. As the officers were exiting the house with Mitchell, Sergeant Ricci testified that he said to Mr. Tillman, "I thought you said nobody else was in the house," and Mr. Tillman "looked down and didn't say anything." Docket 32 at 58.

Mr. Tillman disputes that Deputy Lowe ever asked for or that he provided verbal consent to the officers to search the home for Richards. *Id.* at 81. According to Mr. Tillman, after he opened the door, the officers "moved their way in" to the garage as they were explaining that they had an arrest warrant for Richards. *Id.* Mr. Tillman also testified that he did not know that Mitchell was in the house at that time. *Id.* at 82. Mr. Tillman was not under the influence of any drugs at the time of this encounter. *Id.* at 86.

The magistrate judge made a specific credibility finding that the officers testified truthfully and that Mr. Tillman, to the extent his testimony differed

5

from the officers' testimony, was not credible. Docket 31 at 12. The magistrate judge concluded that, whether express or implied, Mr. Tillman did voluntarily consent to the officers' search for Richards inside the house. *Id.* at 14.

## DISCUSSION

Mitchell objects to the magistrate judge's credibility finding and the finding that Mr. Tillman consented to the officers' search of the residence. Docket 33.

### A. The Credibility of the Officers' and Mr. Tillman's Testimony

Mitchell objects to the magistrate judge's finding that the officers were testifying truthfully and that Mr. Tillman's testimony, to the extent his testimony differed from the officers' testimony, was not credible. Docket 33 at 2. The magistrate judge found that "[t]here was no evidence introduced to suggest the officers lied" in their testimony, but there was some evidence that Mr. Tillman lied because he denied Mitchell was in the house. Docket 31 at 12-13. The magistrate judge found that Mr. Tillman "dropp[ing] his head . . . and not wanting to meet the officer's gaze" after being confronted about Mr. Mitchell's presence in the house was evidence that Mr. Tillman's failure to disclose Mitchell was in the house was "not an innocent omission." *Id.* at 13.

After reviewing the transcript of the evidentiary hearing, the court finds that the officers' testimony was credible. The testimony of each of the officers regarding the activities of the Fugitive Task Force that day and of the conversation between Deputy Lowe and Mr. Tillman was consistent. No evidence was introduced to suggest that any of the officers were not being

6

truthful. Though Mitchell offers alternative explanations for Mr. Tillman's body language after being confronted with Mitchell's presence in the house, Docket 33 at 3, no testimony was elicited from Mr. Tillman at the evidentiary hearing regarding his reaction to learning Mitchell was in the house. Because the magistrate judge was in a better position to evaluate any conflicting testimony, the court gives deference to the magistrate judge's conclusion regarding the credibility of the officers versus Mr. Tillman. *See Scares the Hawk*, 683 F. Supp. 2d at 1037. Thus, the court finds that the officers' testimony was credible and that, where Mr. Tillman's testimony differs from that of the officers, his testimony is not credible.

### B. Consent to Search the Residence for Richards

Mitchell objects to the magistrate judge's finding that Mr. Tillman consented to the officers' search of the residence. Docket 33 at 2-5. The Fourth Amendment generally requires that law enforcement officers secure a warrant before conducting a search of a person's home. *See, e.g., Kentucky v. King*, 563 U.S. 452, 459 (2011). To search for the subject of a valid felony arrest warrant inside the home of a third party, officers must have either exigent circumstances or voluntary consent from someone with the authority to grant such consent. *Steagald v. United States*, 451 U.S. 204, 216 (1981). It is the government's burden to establish that voluntary consent was given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973).

Consent is voluntary if, considering the totality of the circumstances, it is the result of "an essentially free and unconstrained choice," and not the result

7

of "duress or coercion." *United States v. Chaidez*, 906 F.2d 377, 380 (8th Cir. 1990) (quoting *Schneckloth*, 412 U.S. at 225, 227). The court looks to several factors to determine whether consent is voluntary, including a person's age, intelligence, and education. *Id.* at 381. The court should also consider whether the person was under the influence of any substances, was informed of their right to refuse consent, and was aware, based on prior arrests, of the "protections afforded to suspected criminals." *Id.* Other factors include the length of time the person was questioned and whether the person was in custody at the time. *Id.* Additionally, courts will look at whether the person was threatened or intimidated by officers or relied on promises or misrepresentations from officers, whether the location was public or secluded, and whether the person "objected to the search or stood silently while the search occurred." *Id.*

Consent need not be express; it can be implied from a person's "words, gestures, or other conduct." *United States v. Pena-Ponce*, 588 F.3d 579, 584 (8th Cir. 2009) (citation omitted). In determining whether a person impliedly consented, courts apply an objective test, asking "whether [the] conduct would have caused a reasonable person to believe" there was consent. *United States v. Faler*, 832 F.3d 849, 853 (8th Cir. 2016) (quoting *United States v. Jones*, 254 F.3d 692, 695 (8th Cir. 2001)).

The Eighth Circuit has consistently held that stepping back from or to the side of a door implies consent. *See United States v. Rodriguez*, 834 F.3d 937, 941 (8th Cir. 2016) (opening the screen door wider, turning, and walking

8

inside the house, after officer asked to come inside and talk, implied consent); *Faler*, 832 F.3d at 852-53 (stepping aside, after officers asked if they could come in, implied consent); *United States v. Greer*, 607 F.3d 559, 563 (8th Cir. 2010) ("[W]hen [the defendant] opened the door to the porch and stepped back, he impliedly invited the officers to enter."); *United States v. Turbyfill*, 525 F.2d 57, 59 (8th Cir. 1975) ("[T]he action of [the defendant] in the opening of the door and stepping back constituted an implied invitation to enter.").

Here, the credited testimony of all three officers is that Deputy Lowe asked Mr. Tillman for consent to search the house for Richards. All three officers also testified that they did not enter the house until Mr. Tillman stepped to the side of the doorway, allowing them entry. Regardless of whether Mr. Tillman ever provided express consent, his conduct in stepping to the side of the doorway "would have caused a reasonable person to believe" he consented to the officers' entry to look for Richards. *See Faler*, 832 F.3d at 853 (quoting *Jones*, 254 F.3d at 695). Thus, the court finds that Mr. Tillman impliedly consented to the officers' search of the residence.

The testimony elicited at the evidentiary hearing also provides sufficient evidence to find that Mr. Tillman's implied consent was voluntary. Applying the factors from *Chaidez*, Mr. Tillman is an adult and was not under the influence of any drugs at the time. Docket 31 at 71, 86. Though the officers did not inform him of his right to refuse consent, the magistrate judge found that Mr. Tillman was "very experienced with the criminal justice system, thus making it more likely he knew he could deny the officers" consent if he wanted to. Docket

9

31 at 13. Additionally, based on the testimony of each officer, Mr. Tillman was questioned for only a brief period before he stepped aside to let the officers in, and Mitchell does not claim that the officers intimated or threatened Mr. Tillman into allowing them to search the residence. Finally, Mr. Tillman never objected to the officers' entry or search of the home. Thus, when Deputy Lowe asked Mr. Tillman if the officers could search the residence for Richards, and Mr. Tillman stepped to the side, allowing the officers to enter, Mr. Tillman voluntary and impliedly consented to the search of the residence.

## CONCLUSION

The court adopts Magistrate Judge Duffy's Report and Recommendation and denies Mitchell's motion to suppress. Thus, it is

ORDERED that the Report and Recommendation (Docket 31) denying Mitchell's motion to suppress (Docket 25) is adopted.

Dated August 25, 2021.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE